DEBORAH M. SMITH
Acting United States Attorney
Room C-253, Federal Building and
United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071

JUSTIN S. KIM
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 307-0977

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>EUGENE GEORGE WARNER, individually and as trustee of KWOO, AN ALLEGED PURE TRUST; and KWOO, AN ALLEGED PURE TRUST,<br>Defendants. | Civil No. A05-0043-CV (JWS)<br><br>MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR DEFAULT JUDGMENT |

The United States of America, through its undersigned counsel, submits this memorandum in support of its motion for default judgment against Eugene George Warner and KWOO, an alleged pure trust ("defendants"). The United States is entitled to default judgment against defendants because they have failed to respond to the United States' complaint, default has been entered against them, and the documents submitted with this memorandum demonstrate that the United States is entitled to the relief sought in its complaint.

## STATEMENT OF FACTS

In 1994, defendant Eugene George Warner ("Warner") filed an action in Alaska state court against various IRS employees for actions taken in the course of collecting his unpaid tax liabilities. The United States removed the case to this Court, where it was ultimately dismissed. While the case was still pending, Warner filed a document styled a "Ninth Amendment Judgment Lien" with the Anchorage recording district that purported to encumber the property of the IRS employees he had sued. This Court later ordered that false lien expunged.

Based on his filing of the false lien, in 1997, Warner was indicted for, among other charges, corruptly endeavoring to impede the due administration of the internal revenue laws. Warner was ultimately convicted on this charge and sentenced on March 2, 1998. As a condition of his release from incarceration, Warner was enjoined from filing frivolous liens or encumbrances against any federal, state, or Anchorage school district employees for a period of one year.

Warner continued to owe outstanding income tax liabilities, and IRS Revenue Officer Doris Marshall was assigned to collect those liabilities in August 2001. [Declaration of Doris Marshall ("Marshall Decl.") ¶ 2.] In July 2003, Revenue Officer Michael Walsh was assigned to collect those liabilities. [Declaration of Michael Walsh ("Walsh Decl.") ¶ 2.] At some time during this period, Warner began using defendant KWOO, a purported pure trust, to hold a bank account and real property in Hawaii for Warner's use. The IRS subsequently filed liens naming KWOO as the nominee of Warner. [Id. ¶ 3.]

On April 18, 2003, Warner filed a Chapter 13 bankruptcy. [Declaration of Ronald Chan ("Chan Decl.") ¶ 3.] Accordingly, Revenue Officer Doris Marshall released the IRS levies on Warner's property. This bankruptcy was dismissed on Warner's initiative on April 29, 2003. Revenue Officer Michael Walsh then resumed the levies. [See Walsh Decl. ¶ 3.] On October 16,

2003, Warner filed a second Chapter 13 bankruptcy. [Declaration of Stephen Baker ("Baker Decl.") ¶ 2.] During this bankruptcy, Warner concealed the ongoing sale and transfer of the Hawaii property held by KWOO. On August 12, 2004, the bankruptcy court dismissed the bankruptcy, holding that Warner's outstanding pre-petition tax debts were not dischargeable. [Id. ¶ 3.] Stephen Baker of the Office of Chief Counsel of the IRS represented the United States in the bankruptcy. [Id. ¶ 2]

Because of Warner's actions during the bankruptcy, on February 24, 2004, the IRS referred the matter to its Criminal Investigation Division for investigation of possible bankruptcy and tax fraud. [Chan Decl. ¶ 2-5.] Special Agent Ronald Chan of the Criminal Investigation Division is assisting in that investigation. [Id. ¶ 5.]

On November 18, 2004, Warner filed with the Anchorage Recording District of the State of Alaska a document styled a "Criminal Complaint" falsely alleging crimes committed by and describing as his debtors the following persons: (1) Michael Walsh, (2) Doris Marshal, (3) Ronald Chan, (4) Stephen Baker, and (5) Dave Stout,[1] (hereinafter collectively, the "named persons"), as well as the State of Alaska and the Internal Revenue Service. [Declaration of Justin S. Kim ("Kim Decl."), ¶ 3, Ex. A.]

The Criminal Complaint purports to have been issued by the "Federal State Court." In an apparent attempt to legitimize the false Criminal Complaint, Warner listed "the people of The united States" (sic) as plaintiffs, along with himself and KWOO. Using tax protest rhetoric, the Criminal Complaint accuses the named persons of a variety of crimes. The Recording Index entry for the

[1] Dave Stout is an employee of the State of Alaska.

document describes the named persons as "grantors" to the parties listed as plaintiffs and is listed as a "Declaration of Clarification- Theft/Embezzlement."

None of the named persons are personally acquainted with Warner and none have had any contact or relationship with him other than in their official capacity with the United States. [See Walsh Decl. ¶ 4; Baker Decl. ¶ 4; Marshall Decl. ¶ 4; Chan Decl. ¶ 6.] None of the named persons has engaged in any contract or personal transaction with Warner and none owe money to Warner. [See Walsh Decl. ¶ 5; Baker Decl. ¶ 5; Marshall Decl. ¶ 5; Chan Decl. ¶ 7.] None of the named persons have been charged with any crime related to Warner. [See Walsh Decl. ¶ 6; Baker Decl. ¶ 6; Marshall Decl. ¶ 6; Chan Decl. ¶ 8.] There is no legitimate reason for Warner to impose a lien on the personal property of the named persons or to record a document that purports to show that they committed crimes. [See Walsh Decl. ¶ 6; Baker Decl. ¶ 6; Marshall Decl. ¶ 6; Chan Decl. ¶ 8.]

The named persons are aware of the false Criminal Complaint that Warner filed against them with the Anchorage Recording District. [See Walsh Decl. ¶ 7; Baker Decl. ¶ 7; Marshall Decl. ¶ 7; Chan Decl. ¶ 9.] The Criminal Complaint has caused them to experience distress and anxiety because Warner's Criminal Complaint may have a negative impact on their permanent credit records. [See Walsh Decl. ¶ 7; Baker Decl. ¶ 7; Marshall Decl. ¶ 7; Chan Decl. ¶ 9.]

Defendants' harassment of the named IRS employees continues. Counsel for the United States recently received a document styled a "Notice of Removal" in which Warner describes himself as an "embassador" and states that defendants have "removed" the false action described in the Criminal Complaint to "a native American Tribal Court of international law without the United States of America." [See Kim Decl., ¶ 4, Ex. B.] Warner recorded this document with the Anchorage Recording District on February 1, 2006. [Id.]

## ARGUMENT

### I. Default Judgment May Be Entered Against Defendants.

Under Rule 12(a)of Federal Rules of Civil Procedure, a defendant has twenty (20) days after being served with the summons and complaint or ten (10) days after notice of the court's denial of a motion, to serve an answer. See Fed. R. Civ. P. 12 (a)(1)(a) and (a)(4)(A). Furthermore, Rule 55 of the Federal Rules of Civil Procedure provides that "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the party may be defaulted. In this case, default was entered against both defendants on January 25, 2006.

Once default has been entered against a party, the party seeking affirmative relief may move for default judgment. Fed. R. Civ. P. 55(b). As the Ninth Circuit observed in H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689 (9th Cir. 1970), default judgments are appropriate

> when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with an interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection. Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy.

H.F. Livermore Corp., 432 F.2d at 691.

In this matter, defendants have failed to respond to the Complaint, and default was entered against them on January 25, 2006. In addition, defendants are not infants or incompetent persons. [Kim Decl. ¶ 2.] Therefore, entry of default judgment against them is proper. See Fed. R. Civ. P. 55(b).

**II. Defendants' False Criminal Complaint Should Be Nullified.**

Section 7402(a) of the Internal Revenue Code[2] specifically grants district courts jurisdiction "to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws ." I.R.C. § 7402(a); see Ryan v. Bilby, 764 F.2d 1325, 1327 (9th Cir. 1985). This language is broad and indicates "a Congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." Brody v. United States, 243 F.2d 378, 384 (1st Cir.), cert. denied, 354 U.S. 923 (1957); see also United States v. First Nat'l City Bank, 568 F.2d 853 (2d Cir. 1977). Section 7402(a) "has been used to enjoin interference with tax enforcement even when such interference does not violate any particular statute." United States v. Ernst & Whinney, 735 F.2d 1296, 1300 (11th Cir. 1984), cert. denied, 470 U.S. 1050 (1985). "The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions." United States v. Ekblad, 732 F.2d 562, 563 (7th Cir. 1984), (citing Island Airlines, Inc. v. CAB, 352 F. 2d 735, 744 (9th Cir. 1965)).

The Court of Appeals for the Ninth Circuit has held Section 7402(a) of the Internal Revenue Code empowers the district courts "to void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes." Ryan v. Bilby, 764 F.2d 1325, 1327 (9th Cir. 1985); see also Cook v. Peter Kiewit Sons Co., 775 F.2d 1030, 1035 (9th Cir. 1985), cert. denied, 476 U. S. 1183 (1986); United States v. Ekblad, 732 F.2d 562, 563 (7th Cir. 1984); United States v. Hart, 701 F.2d 749, 750 (8th Cir. 1983); United States v. Greenstreet, 912 F. Supp.

[2] Title 26 of the United States Code, hereinafter I.R.C.

224, 225 (N.D. Tex. 1996). Characteristically, these bogus liens are filed against IRS officials by persons whose tax liability the IRS seeks to investigate or whose delinquent taxes the IRS attempts to collect, and the lienor has no bona fide creditor's claim against the IRS official. E.g., Cook v. Peter Kiewit Sons Co., 775 F.2d at 1032; Ryan v. Bilby, 764 F.2d at 1327; United States v. Ekblad, 732 F.2d at 563; United States v. Hart, 701 F.2d at 750. Under these circumstances, such liens serve no purpose other than

> to harass the IRS employees and deter them from enforcing the tax laws. The tax protestors, while claiming to act in the interests of freedom and personal liberty, use this weapon to harass private individuals in their private lives, as part of the tax protestors' campaign.

United States v. Van Dyke, 568 F. Supp. 820, 821 (D. Or. 1983). Courts have viewed the filing of such liens as " threaten[ing] substantial interference with the administration and enforcement of the internal revenue laws." United States v. Hart, 545 F. Supp. 470, 473 (D.N.D. 1982), aff'd, 701 F.2d 749 (8th Cir. 1983).

The filing of bogus liens has been characterized as a "favorite radical . . . tactic since at . . . least the early 1980s." Daniel L. Levin & Michael W. Mitchell, *A Law Unto Themselves: The Ideology of the Common Law Court Movement*, 44 S.D. L. Rev. 9 (1999). The "Montana Freemen" have been known to hold seminars teaching anti-government extremists how to file a UCC Financing Statement for harassment purposes. Juliet M. Moringiello, *Revised Article 9, Liens from the Fringe, and Why Sometimes Signatures Don't Matter*, 10 Widener J. Pub. L. 135, 138 (2001). Although undersigned counsel is not aware of the source of Warner's tactics, it is clear that harassment of government officials by filing false liens has become common.

In this case, Revenue Officers Walsh and Marshall were assigned a collection case against Warner in 2001 and levied on Warner's property. Stephen Baker represented the IRS in Warner's

bankruptcy, and Ronald Chan is supervising an investigation into whether Warner has violated the internal revenue laws. The IRS employees have had no contact with defendants outside the scope of their official duties. Defendants are retaliating against them personally for their actions on behalf of the United States.

On November 18, 2004, defendants recorded a document styled a "Criminal Complaint" in the Anchorage Recording District. Despite its caption, this document was apparently never filed in any court. However, it purports to be a judgment by the "Federal State Court" against the IRS employees listed above. It accuses them of various crimes, asserts liens against their property and damages totaling $4,500,000 plus interest and penalties. Like the UCC Financing Statements in the cases discussed above, this document constitutes harassment of IRS employees in an attempt to bog down the system so that like-minded taxpayers escape scrutiny. The "Criminal Complaint" was filed to intimidate and harass the named persons and this, in turn, interferes with the proper administration of the internal revenue laws of the United States.

The IRS collection actions that apparently prompted defendants to file the "Criminal Complaint" are unquestionably legitimate. The IRS has been specifically authorized by Congress to collect outstanding federal tax liabilities. 26 U.S.C. §§ 6321, 6322 and 6331(a). In Phillips v. Commissioner, 283 U.S. 589, 595 (1931), the Supreme Court held that "[t]he right of the United States to collect its internal revenue by summary administrative proceedings has long been settled." Accord Commissioner v. Shapiro, 424 U.S. 614 (1976). Defendants' assertion in the "Criminal Complaint" that the IRS employees' actions were somehow illegal is therefore frivolous.

Moreover, there is no evidence whatsoever that any judgment or other security interest underlies the claims defendants assert in the "Criminal Complaint." First, there is no indication in the document itself or elsewhere that it was filed in or issued by any court as there is no "Federal

State Court." Second, the document does not include a court file stamp, as an actual judgment would. Indeed, no such judgment could exist because, as courts have repeatedly held, there is no private right to bring criminal actions. See, e.g., Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.1980). Defendants' apparent attempt to circumvent this limitation by listing "the people of the united States" as a party to the "Criminal Complaint" appears to be an attempt to circumvent this limitation, as well as an attempt to give the document a further air of legitimacy. The Court should disregard this attempt and find the document legally baseless.

The Court is respectfully requested to enter judgment in favor of the United States and against defendants, declaring that the "Criminal Complaint" is null, void, and of no legal effect. The United States requests permission to submit a proposed order of nullification suitable for filing with the Anchorage Recording District.

## III. Defendants Should Be Enjoined from Filing Similar Documents or Liens.

Injunctive relief "is available to a party who demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor." Sammartano v. First Judicial District Court, 303 F.3d 959, 965 (9th Cir. 2002). In addition, the public interest should be considered in appropriate cases. Id. at 965; see also Dataphase Systems Inc. v. C L Systems Inc., 640 F.2d 109, 114 (8th Cir. 1981). Plaintiff satisfies the standard for the issuance of a permanent injunction against defendants from filing any document or instrument which purports to create a non-consensual lien or encumbrance of any kind against any employee of the federal government. Specifically, through the Declarations which have been filed with the Court, the United States has demonstrated that the United States and the named persons (and other, similarly situated employees of the IRS) are threatened with the possibility of irreparable harm in the absence of an injunction; that granting the

injunction will not harm Warner; that the United States will succeed on the merits of the instant civil action; and that the public interest favors the granting of the injunction.

Courts have viewed the filing of such liens as "threaten[ing] substantial interference with the administration and enforcement of the internal revenue laws." United States v. Hart, 545 F. Supp. 470, 473 (D.N.D. 1982), aff'd, 701 F.2d 749 (8th Cir. 1983). Thus, in addition to declaring such liens void, courts have used Section 7402(a) to enjoin taxpayers from filing further frivolous liens against government employees. See Ryan v. Bilby, 764 F.2d at 1327 (9th Cir. 1985) (noting, with approval, the District Court's action in United States v. Van Dyke, 568 F. Supp. 820 (D. Or. 1983), enjoining filing of frivolous liens against IRS employees); United States v. Ekblad, 732 F.2d at 563; United States v. Hart, 701 F.2d at 750 (enjoining taxpayer and others acting with him from "attempting to molest, hinder or impede IRS employees in the performance of their official duties"); United States v. Mark L. Bryan, 2005 WL 1335520 (E.D. Cal. 2005); cf. Cook v. Peter Kiewit Sons Co., 775 F.2d at 1034 (upholding district court's injunction against future related litigation where taxpayer brought suit and filed liens attempting to prevent income tax withholding from his paycheck).

**A. Probability of Success on the Merits**

The plaintiff, the United States, commenced this action to obtain (in addition to other relief) a declaration that defendants' false Criminal Complaint is null, void and of no legal effect. This, in turn, served as part of the basis for the plaintiff's request for injunctive relief to prevent the defendants from filing similar liens or documents in the future. The false Criminal Complaint in this case lacks any factual or legal basis, for the reasons explained above. Therefore, the United States is certain to prevail on the merits of this case and obtain a declaration that the Criminal Complaint is

null and void, in light of the prior case law in this area. E.g., Ryan v. Bilby, 764 F.2d at 1327 (9th Cir. 1985); United States v. Ekblad, 732 F.2d at 563.

B. **Irreparable Harm**

Where an injunction is expressly authorized by statute and the statutory conditions are satisfied, the movant is not required to establish irreparable injury before obtaining injunctive relief. United States v. Odessa Union Warehouse Co-op, 833 F.2d 172 (9th Cir. 1987); United States v. Cohen, 222 F.R.D. 652 (W.D. Wash. 2004) (website providing fraudulent tax advice enjoined). Accordingly, in the present case, the United States is only required to show that the actions of the defendants have interfered with the administration and enforcement of the internal revenue laws, which is clearly the case here. However, as set forth below, the United States can meet the burden to show the possibility of irreparable injury under the test set forth in Sammartano, supra, applicable where, as here, the likelihood of success is strong. Thus, regardless of the standard to be applied, the United States is entitled to the injunctive relief which it seeks.

In addition to causing personal distress to the named persons (by potentially clouding title to property owned by those persons and damaging their credit ratings), the denial of the requested relief will result in interrupting, hindering and impeding employees of the Internal Revenue Service in discharging their official duties to collect federal taxes. United States v. MacElvain, 858 F. Supp. at 1100 ("The filing of such frivolous documents imposes **irreparable harm** on the individuals and entities which are the victims of the liens.") (emphasis added); United States v. Kaun, 633 F. Supp. 406, 418 (E.D. Wis. 1986) ("[Defendant] and his followers continue to seek to frustrate the administration and enforcement of the federal tax laws -- all to the great **irreparable harm** of the Internal Revenue Service and the public it serves.") (emphasis added); United States v. Van Dyke, 568 F. Supp. at 822 ("I also find that the actions of Van Dyke . . . in filing these lawsuits and

documents, impose **irreparable harm** upon the employees of the federal government with whom these tax protestors quarrel. Titles to real estate have been clouded, banks have been the subject of frivolous attempts at 'garnishment,' and in general the employees of the federal government have been harassed in their personal lives for doing their jobs.") (emphasis added). The United States respectfully submits that, as a matter of law, it will suffer irreparable harm in the absence of an injunction.

**C. Balance of Harms**

In determining whether an injunction should issue, this Court must balance the harm which the United States (and the named persons) will suffer if an injunction is not granted with the harm which the defendants will suffer if he is enjoined from filing similar liens against federal employees in the future. As discussed in this memorandum of law, supra, the Criminal Complaint is without factual or legal basis, and thus has no force or legal effect. Therefore, defendants will not be injured by an injunction which provides that they cannot record similar non-consensual liens or encumbrances in the future. See In re Martin-Trigona, 763 F.2d 140, 141-142 (2d Cir. 1985), cert. denied, 474 U.S. 1061 (1986); United States v. Thomas, 819 F. Supp. at 928. Thus, the balance of harms weighs in favor of granting plaintiff's requested relief.

**D. The Public Interest**

Given the public's interest in the judicial process, the fair administration of the federal tax laws, and the prevention of abuse and harassment of government employees, it is in the interest of the public that plaintiff's motion for summary judgment be granted and that a permanent injunction issue in this case. See United States v. Van Dyke, 568 F. Supp. at 821. Honest taxpayers are twice disadvantaged by Warner's tactics, (1) when he does not pay his share of taxes and (2) when the cost of undoing his harassment is imposed on them.

## CONCLUSION

Based upon the foregoing, summary judgment should be entered in favor of the United States declaring the false Criminal Complaint null, void, and without legal effect; and an injunction should be issued which enjoins defendants from filing similar non-consensual liens in the future.

Dated this 9th day of August, 2006.

Respectfully submitted,

DEBORAH M. SMITH
Acting United States Attorney

/s/ Justin S. Kim

JUSTIN S. KIM
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0977

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR DEFAULT JUDGMENT was sent to the following parties on August 9th, 2006 by regular U.S. Mail:

Eugene George Warner
3731 Laron Lane
Anchorage, Alaska 99504

KWOO
c/o Eugene George Warner
3731 Laron Lane
Anchorage, Alaska 99504

/s/ Justin S. Kim